O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VICHETH PROEUNG,                          )          CASE NO. CV 07-03601 GW (RZ)
                                          )
                    Petitioner,           )
                                          )
        vs.                               )          REPORT AND RECOMMENDATION
                                          )          OF UNITED STATES MAGISTRATE
JOHN MARSHALL, Warden,                    )          JUDGE
                                          )
                    Respondent.           )
_____  )

       Pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California, the undersigned submits this Report and Recommendation to the Honorable George H. Wu, United States District Judge.  The undersigned recommends that the Court deny the Petition for Writ of Habeas Corpus and dismiss the action with prejudice.

## I.

## BACKGROUND AND CLAIMS PRESENTED

       On November 6, 2003, a Los Angeles County Superior Court jury convicted Petitioner Vicheth Proeung of making criminal threats.  The jury acquitted him of the other two charges, however, possession of a firearm by a felon and personally using a firearm in making the threats.  The trial court found that Petitioner had suffered two prior serious

felony convictions qualifying as "strikes" for purposes of California's Three Strikes law. Although the court "struck a strike" – that is, it disregarded one of the prior felonies for purposes of sentencing – Petitioner still received a prison sentence of 17 years.

Petitioner appealed. On January 31, 2005, the California Court of Appeal rejected relief on the merits in an unpublished opinion. The California Supreme Court denied further direct review on April 13, 2005.

About five months later, Petitioner began a series a state habeas petitions. The California Supreme Court denied his final petition on October 8, 2006.

In the current petition, Petitioner asserts the following eight claims, several of which have subclaims:

1. Trial counsel was ineffective in several ways.

2. Insufficient evidence supported one element of the threats conviction.

3. Petitioner had sufficient provocation to justify his threat in any event.

4. The trial court made several sentencing errors.

5. The prosecutor committed misconduct.

6. The trial court "abused its discretion" in various ways.

7. The trial court committed *Boykin-Tahl* error.

8. Appellate counsel was ineffective in numerous ways.

## II.
## STANDARD OF REVIEW

The Court assesses the Petition under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which provides in part:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

To resolve Claim 7, the Court will examine the explicated decision of the California Court of Appeal rejecting that claim on direct review, *see* Lodgment 4, rather than the California Supreme Court's subsequent "silent" denial of further direct review. This is because "where there has been one reasoned state court judgment rejecting a federal claim, [federal habeas courts should presume that] later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

But the state courts rejected Petitioner's remaining seven claims without explanation.  Thus, no underlying opinion exists for this Court to scrutinize under the AEDPA guidelines as to Claims 1 through 6 and Claim 8.  Although federal habeas review is not *de novo* for such unexplained rejections, the Court will review the record independently and determine whether, in light of that review, the state courts' rejection was "objectively unreasonable."  *See Himes v. Thompson*, 336 F.3d 848 (9th Cir. 2003).

### III.
### THE CRIMES

In affirming, the California Court of Appeal summarized the factual circumstances underlying Petitioner's conviction.  Petitioner has failed to rebut these findings with clear and convincing evidence.  The findings therefore are presumed to be

- 3 -

correct.  28 U.S.C. § 2254(e)(1); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir. 2001) (presumption applies to findings of state appellate courts as well as trial courts).  The appellate court's summary is as follows:

> On March 2, 2003, Sam Meas [("Meas")] lived with his daughter Sophorn Sonnie Sam [("Sam")], and Sam's daughter.  Appellant was the father of Sam's daughter but did not live in the house.  That evening, Meas was awakened by an argument between his daughter and appellant.  Meas approached appellant, and the argument moved from the house to the yard.  With a broom in his hand, Meas told appellant to leave and not come back.  Appellant reached into his pants pocket and pulled out a small black gun with a barrel, and stated, "I don't give a shit about your house.  I'm going to shoot you right now."  Frightened, Meas ran upstairs.  Sam left with appellant in order to calm him down.  Meas did not call the police because he was afraid that appellant would come back and shoot him.  Meas's daughter-in-law called the police.

> Long Beach Police Officer Alex Lawrence interviewed Meas and his family at the Meas home.  Family members translated for Meas.  Meas told him that appellant pulled a firearm out of his pocket, exposed it, and said I'm going to shoot your head off.  Meas described the firearm as a .22 caliber handgun.

> At the conclusion of the jury trial, a court trial was held on appellant's prior convictions and prior prison terms.  The prosecution submitted as evidence a set of exhibits pursuant to Penal Code section 969(b).  The package included a chronological history of appellant's incarceration, three abstracts of judgment, and two fingerprint exemplars and a photograph of appellant.  The prosecution also provided a more recent fingerprint exemplar, along with a written fingerprint comparison certification which certified that

the examiner was prepared to testify that the fingerprints in that exemplar matched those in the 969 package.

The fingerprint examiner was not available, and appellant agreed to stipulate that the fingerprints on the recent exemplar were his and they matched those in the 969 package. No further evidence was offered, and the trial court found that appellant had suffered two prior serious convictions and served one prior prison term.

Lodgment 4 at 2-3.

**IV.**

**CLAIM 1:  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL**

Petitioner asserts that his trial attorney was prejudicially ineffective in five ways.

**A.**   **Applicable Law:  *Strickland***

To show a violation of the Sixth Amendment based on ineffective assistance of counsel, Petitioner bears the burden of showing that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at 687-88. Such performance prejudices a petitioner where there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Judicial review of an attorney's performance is "doubly deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540 U.S. 1, 6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003).

///

///

### B.    Discussion

#### 1.    Failure to seek severance of counts

Petitioner faults his trial attorney, Deputy Alternate Public Defender Leslie Kelley, for failing to sever the felon-possessing-a-firearm count, for which Petitioner was not convicted, from the count for which he was convicted, making criminal threats. Petitioner asserts that the jurors were prejudiced as to the threat charge once they heard that he was a felon.  Petitioner cites no Supreme Court authority establishing that an attorney is ineffective for such an omission, and the claim fails for this reason alone. In addition, the trial court instructed the jury with CALJIC No. 12.48.5 ("Prior Conviction – Limited Use"), cautioning them that they must not allow the fact that Petitioner had stipulated to a prior felony prejudice them in any way as to whether or not he possessed a firearm.  *See* Clerk's Transcript (CT) 64.  Jurors are presumed to follow their instructions, *Weeks v. Angelone*, 528 U.S. 225, 234, 120 S. Ct. 727, 145 L. Ed. 2d 727 (2000), and Petitioner supplies no evidence to overcome that presumption here.

Finally, counsel appears to have been effective, not ineffective.  She argued that the evidence was insufficient to prove Petitioner possessed a gun, and the jury agreed with her, resulting in acquittal on two of the three charges.  Although counsel did not also succeed in persuading the jury that the evidence was insufficient as to the criminal-threats charge, it is counterintuitive at best for Petitioner to suggest that the jurors, simply by hearing that Petitioner was charged as a felon in possession of a gun, were irretrievably prejudiced against him (and therefore that counsel was ineffective for not seeking severance).  On the contrary, a jury thus prejudiced – despite the trial court's express admonition against it – would seem most unlikely to have acquitted him of most of the counts. This result strongly suggests that the jury deliberated on each count discretely and carefully, without being prejudiced by the existence of the felon-possessing-a-firearm count.  Habeas relief is unwarranted.

///

///

### 2.     Failure to consult Petitioner regarding defense

Petitioner complains that counsel failed to confer with him about his defense. He does not explain further.  He thus leaves the Court to wonder what insights Petitioner might have shared with counsel and how any further or better conferral with counsel would have made it reasonably likely that Petitioner would have obtained a better outcome at trial. Such conclusory allegations lacking a statement of specific facts do not warrant habeas relief.  *See James v. Borg,* 24 F.3d 20, 29 (9th Cir. 1994).

### 3.     Failure to present an affirmative defense

Petitioner next asserts that counsel failed to put on an affirmative defense.  But that is all he says in support of this subclaim, which therefore fails under *James*, *supra*.  He shows neither (1) the content of the defense case that counsel supposedly should have presented, nor (2) that, had such a case been presented, it is reasonably likely that Petitioner would have obtained a better result at trial.  (Petitioner states that "a more detailed and concise [*sic*] statement of facts" about this subclaim "will be included within the Traverse." It was not included there.  *See* Traverse at 3-4.  Even if it had appeared as promised, it would have been unfair for Petitioner to present supporting facts for the first time in his Traverse, to which Respondent ordinarily has no right to respond.)

### 4.     Failing to investigate

Petitioner nebulously faults counsel for failing "to investigate [the following]: impeachment evidence, priors, adequate defenses, or the very truth of the facts within said case[.]"  He does not explain this, however, such as by supplying evidence of what the desired investigation would have yielded and how those results would have made a better trial result reasonably likely. This vague and conclusory subclaim thus fails under *James*.

///
///
///

### 5.      Failure to prepare and advise Petitioner for sentencing

Finally, Petitioner argues that counsel was ineffective for failing to prepare him for sentencing issues, such as by allowing him to admit prior crimes without proper admonitions and by allowing the "dual use" of prior crimes.  As discussed below in sections VII.B and X of this Report, Petitioner fails to show that he admitted his prior offenses without proper waivers or that the trial court made improper "dual use" of facts.

## V.

## CLAIM 2:  INSUFFICIENT EVIDENCE

Petitioner asserts that insufficient evidence supported a finding that he had the specific intent – as required for a criminal-threat conviction – that his words be *taken* as a threat.  *See* CAL. PENAL CODE § 422; *People v. Toledo*, 26 Cal.4th 221, 224, 109 Cal.Rptr.3d 315 (2001).  The standard for evaluating a constitutional claim of sufficiency of the evidence is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis in original).  All evidence must be considered in the light most favorable to the prosecution.  *Id.*  This standard is applied to the substantive elements of the criminal offense defined by state law.  *Id.* at 324.  This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Id.* at 319.

In order to establish sufficient evidence, the prosecution need not affirmatively "rule out every hypothesis except that of guilt."  *Id.* at 326.  Moreover, a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Id.* at 326.  Even where evidence is "almost entirely circumstantial and relatively weak," it may be sufficient to support a conviction.  *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).  On

1  habeas review, moreover, reviewing courts "apply the standards of *Jackson* with an
2  additional layer of deference."  *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).

3      Here, ample evidence existed from which the jury reasonably could have
4  inferred that Petitioner intended his utterances to be taken as a threat.  (Contrary to
5  Petitioner's implication, California law does not further require proof that the defendant
6  *actually* intend to carry out the threat.  *See People v. Toledo*, *supra*, 26 Cal.4th at 227-28.)
7  Meas was awakened late in the evening by Petitioner and Sam's loud argument.  Meas
8  approached, and the argument moved outside.  Brandishing a broom, Meas told Petitioner
9  to leave and not to return.  Petitioner pulled a small black gun from his pants pocket and
10 said, "I don't give a shit about your house.  I'm going to shoot you right now."  *See* RT 47-
11 51, 57-58, 97-100.  Meas was sufficiently frightened by these words that he ran upstairs.
12 RT 50-51.  The jurors were entitled to infer from this evidence that Petitioner intended
13 Meas to take the words as a threat.  It was not unreasonable for the California Supreme
14 Court to conclude that the record evidence satisfied the *Jackson* standard.  Petitioner's
15 claim here, as in the state court, simply asks for a re-weighing of the evidence in his favor.
16 Habeas relief is unavailable.

17

18                                    **VI.**

19                   **CLAIM 3:  JUSTIFICATION FOR THE THREAT**

20      In Claim 3, Petitioner urges that, even if he did commit the criminal threat, it
21 was justified because he was provoked and his words were uttered spontaneously in the
22 heat of passion.  But he cites neither any state law nor, more importantly here, any federal
23 law violated in the underlying state court proceedings.  As with the preceding claim, this
24 claim essentially asks the reviewing court to ignore the findings actually made, beyond a
25 reasonable doubt, by the jury, and substitute new findings in their place.  Habeas relief is
26 unavailable.

27

28

# VII.

## CLAIM 4:  SENTENCING ERRORS

In Claim 4, Petitioner argues that the trial court committed various sentencing errors.

### A.    *Cunningham* **error**

Petitioner asserts that the trial court violated his Sixth Amendment jury-trial rights when it assigned the upper term (of three possible terms) for his conviction without a jury's finding of aggravating facts beyond a reasonable doubt.  Petitioner's claim draws support from a series of Supreme Court cases, starting with *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"), and continuing in *Blakely v. Washington*, 542 U.S. 296, 303, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (holding that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*") (emphasis in original).  Most recently, in *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), the Court held that under California law, the middle of three permissible sentencing terms, not the upper term, is the relevant "statutory maximum" for *Apprendi* purposes, and therefore that a defendant is entitled to a jury finding before being sentenced to an upper term (presumably unless the upper term was selected solely on the fact of prior conviction).  *See Cunningham*, 549 U.S. at 293-94.

As a threshold matter, Respondent's argument that Petitioner's claim improperly seeks retroactive application of a "new rule" of constitutional law, in violation of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), is foreclosed by *Butler v. Curry*, 528 F.3d 624 (9th Cir.), *cert. denied,* 129 S.Ct. 767, 172 L.Ed.2d 763 (Dec. 15, 2008).  *Butler* held that *Cunningham* did not announce a new rule of

constitutional law under *Teague*.  528 F.3d at 639.  On the contrary, *Butler* held that *Apprendi*, *Blakely*, and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), established that sentencing schemes violate the constitutional rights of defendants if those schemes (a) increase the statutory maximum term (b) based on facts – other than the existence of a prior conviction – found by a judge, rather than a jury beyond reasonable doubt.  *See Butler*, 528 F.3d at 639.  Therefore, *Cunningham* can be applied to review the merits of Petitioner's subclaim.

Nor is the claim unexhausted, as Respondent asserts.  The claim is not rendered unexhausted simply because Petitioner did not cite *Cunningham* itself in the California Supreme Court.  *Cunningam* is not a "new rule," and thus its citation in the state courts was not necessary to exhaust a claim under *Apprendi*, which Petitioner did cite, albeit mixed within a clump of other arguments.  *See* Lodgment 11 (Pet'r's Br. in Cal. Supreme Ct.) at 4 (complaining of high-term sentence without jury finding, and citing *Apprendi*).

The state courts' rejection of the Sixth Amendment sentencing claim may have been "contrary to" Supreme Court authority, including *Cunningham*.  28 U.S.C. § 2254(d).  One reason why the Court cannot make a definitive finding of error is that the trial court does not appear to have stated its reasons for imposing the upper-term, three-year base sentence for the threats.  (The sentence appears to have combined sympathy for the Petitioner, in that the trial court could have imposed a 25-years-to-life "Third Strike" sentence but chose not to, with toughness, in that the judge could have imposed an even more lenient base sentence instead of the upper term.)  *See* RT 225-30.  Another reason is that "the fact of a prior conviction is the only fact that both increases a penalty beyond the statutory maximum and can be found by a sentencing court," *Butler*, 528 F.3d at 645, and the trial court may have relied on Petitioner's several prior convictions here.  *See* RT 230 ("The Court, having also found to be true the two [prior strikes] . . .").  To the extent, however, that the upper-term sentence derived from any *other* aggravating factors, besides the fact of one or more prior convictions, Petitioner's upper term sentence was imposed in

1  violation of the Sixth Amendment.  *Butler*, 528 F.3d at 648; *Cunningham*, 549 U.S. at 293-
2  94.

3          This does not end the inquiry, however.  Sentencing errors in violation of the
4  Sixth Amendment are subject to harmless error analysis.  *Butler*, 528 F.3d at 648 (citing
5  *Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)).
6  Habeas relief is appropriate only if the sentencing error "had a substantial and injurious
7  effect" on Petitioner's sentence.  *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct.
8  1710, 123 L. Ed. 2d 353 (1993); *Butler*, 528 F.3d at 648.  "Under that standard," *Butler*
9  explained,

10

11          we must grant relief if we are in "grave doubt" as to whether the jury would
12          have found the relevant aggravating factors beyond a reasonable doubt.
13          [Citation.]  Grave doubt exists when, "in the judge's mind, the matter is so
14          evenly balanced that he feels himself in virtual equipoise as to the
15          harmlessness of the error."  [Citation.]

16

17  528 F.3d at 648.  Under California law, "only one aggravating factor is necessary to set the
18  upper term as the maximum term."  *Id*.

19          There is little doubt, and surely not "grave doubt," that a reasonable factfinder
20  would have found, beyond reasonable doubt, that at least one of the aggravating factors
21  permitted under California law existed.  *See* CAL. R. CT., Rule 4.421.  Indeed, the jury
22  effectively already so found: in convicting Petitioner, it concluded beyond a reasonable
23  doubt that "the crime involved . . . [a] threat of great bodily harm," *see* CAL. R. CT., Rule
24  4.421(a)(1),  rendering any *Cunningham* error harmless.  It is also very likely that a jury
25  would have found, beyond reasonable doubt, that Petitioner, who had multiple prior
26  felonies, "has engaged in violent conduct that indicates a serious danger to society," "has
27  served a prior prison term" and "was on probation or parole when the crime was
28  committed."  *See* CAL. R. CT., Rule 4.421(b)(1), (3), (4).

1   Petitioner has not shown that any possible constitutional error had a
2   substantial and injurious effect on his sentence. *Brecht*, 507 U.S. at 637; *Butler*, 528 F.3d
3   at 648-51. Habeas relief is unavailable.

4

5   **B.   "Dual use of facts"**

6   Petitioner complains that the trial court's "dual use of facts" – namely the fact
7   of his prior convictions – in not only imposing the upper-term sentence but also doubling
8   it, both based on the priors – was improper. He cites no *federal* law that the state courts
9   violated or unreasonably applied, however, either in imposing his sentence or in rejecting
10  this claim, which appears to lack merit in any event. *Cf. Boultinghouse v. Hall*, 583
11  F.Supp.2d 1145, 1173 (C.D. Cal. 2008) (holding that, whether or not dual use of facts
12  actually violated state or federal law, petitioner's counsel reasonably could have concluded
13  that "any such objection" to "dual use" "would have been meritless"). Even if the state
14  courts erred, and even if that error violated federal law, Petitioner fails to show that it is
15  reasonably likely that he would have obtained a better sentence from the trial judge, who
16  already appears to have taken pains to avoid imposing a "Third Strike" sentence of 25 years
17  to life. Federal habeas relief is unwarranted.

18

19  **C.   Improper amendment to the information**

20  Petitioner's next subclaim is that the trial court failed to arraign him after
21  amending the information "of said prior." But the record reflects that Petitioner was
22  arraigned on August 19, 2003, on the information that was presented to the jury. CT 21-24
23  (information), 25 (minute order of Aug. 19, 2003, reflecting arraignment). The record
24  contains no further amended information. The facts simply do not support this subclaim.
25  ///
26  ///
27  ///
28  ///

### D.   Insufficient evidence of prior convictions

Petitioner faults the trial court for finding that Petitioner's prior convictions existed, whereas he contends the evidence was insufficient.  A court trial was conducted as to the prior convictions and prior prison terms.  CT 99-100.  The prosecution presented a "969 package," named for CAL. PENAL CODE § 969b, including a detailed history of Petitioner's imprisonment history, CT 89-90, three abstracts of prior-conviction judgments, CT 91-93, two fingerprint exemplars, CT 94-95 and a booking photograph of Petitioner. CT 96.  In addition, the prosecution provided a fingerprint comparison certification by an expert who was prepared to testify that Petitioner's fingerprints matched all the exemplars derived from the prior convictions.  *See* CT 99.

The fingerprint expert was not available when the afternoon session began, but Petitioner's counsel recited that "there is someone who is available to come later this afternoon" to testify about the fingerprint match.  RT 209.  She then entered Petitioner's stipulation, on his behalf, to the fact that the fingerprints appearing on the exemplars associated with the alleged prior convictions were Petitioner's prints.  Petitioner also stipulated, through counsel, "to the foundation necessary for the fingerprint report to be received into evidence." RT 209-10.  The court trial proceeded, and the court received the 969 package into evidence.  RT 210; *see* CT 99.  The evidence – including the fact that Petitioner's fingerprints were on the exemplar cards taken from multiple prior convictions – sufficed for purposes of *Jackson* to support a finding that Petitioner indeed had committed the charged priors.  At the very least, the state courts' rejection of this claim was not unreasonable.

### VIII.

### CLAIM 5:  PROSECUTORIAL MISCONDUCT

Petitioner also asserts numerous acts of prosecutorial misconduct.  These include misstating evidence, submitting and vouching for false evidence, withholding exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194,

10 L. Ed. 2d 215 (1963), and failing to give adequate notice to Petitioner's trial counsel. But Petitioner does not elaborate.  This claim thus should be rejected as vague and conclusory under *James, supra*.

## IX.

### CLAIM 6:  "ABUSE OF DISCRETION" BY TRIAL COURT

In Claim 6, Petitioner asserts an "abuse of discretion" by the trial court in the following ways, some of which repeat previously-discussed claims:  (1) failure to supply a jury instruction on lesser included offenses; (2) failing to sever the counts; (3) permitting an amended information without arraigning Petitioner;  (4) allowing the acts of prosecutorial misconduct; (5) failing to allow investigation of the 969 package; (6) dual use of priors; and (7) using facts not found by the jury to enhance Petitioner's sentence.  To the extent this claim repeats or incorporates some claims already rejected, the claim is infirm for the previously-stated reasons.  To the extent it asserts fresh subclaims, it fails for two independent reasons.  The first is *James*.  Petitioner again fails to supply any further information about the subclaims, such as what sort of lesser-included-offense instruction the trial court supposedly should have given.  Second, by asserting a state trial court's "abuse of discretion," Petitioner fails to allege, let alone to demonstrate, that any possible error violated *federal* law as opposed to state law.  Habeas relief is unwarranted.

## X.

### CLAIM 7:  *BOYKIN-TAHL* ERROR

Claim 7 is the only current claim to have been rejected in the California courts on direct appeal and to have an explanation given for its denial.  That scholarly, if extensive, explanation is as follows:

Appellant contends that his stipulation to the enhancement was "tantamount to a guilty plea" and consequently [that] due process demands

- 15 -

that the trial court ensure that he had knowingly and voluntarily waived his constitutional rights. (*Boykin v. Alabama* (1969) 395 U.S. 238.)  As a result, the record must contain evidence on its face that appellant was aware of his right to confrontation, to a jury trial and against self-incrimination, as well as the nature of the charge and consequences of his plea.  Each must be enumerated and responses elicited from the person.  (*In re Tahl* (1969) 1 Cal.3d 122, 132.)  The requirement applies to the taking of pleas as well as to the admission of enhancements and special allegations.  (*In re Yurko* (1974) 10 Cal.3d 857, 863.)

Both appellant and respondent point to the case of *People v. Adams* (1993) 6 Cal.4th 570 (*Adams*) as support for their position.  The defendant in *Adams* was on trial for six felony counts and one misdemeanor count [various firearm, drug and theft related charges].  The information also alleged that three of the offenses had been committed while the defendant was on bail. (Pen. Code § 12022.1.)  After the trial judge declined to bifurcate the "out on bail" allegation, defendant proposed a stipulation that stated:  "At the time Jess Delrey Adams allegedly committed the offenses for which he is presently on trial, he was out of custody on his own recognizance, or on bail for other charges which were then pending against him." (*Adams*, at p. 574.)  The trial court advised Adams that he would have to waive his right to confrontation in order to admit this stipulation[,] and Adams agreed to waive that right.  The stipulation was accepted and presented to the jury.  The jury convicted defendant of the charges on trial and found the Penal Code section 12022.1 allegation to be true.

On appeal, Adams argued that his stipulation was void because the court had not expressly advised him that he would be waiving his right to trial by jury, to confront his accusers, and the privilege against self-incrimination. The Court of Appeal held that full *Boykin-Tahl* advice and waivers were

required.  The Court of Appeal found that the defendant had not been advised of his privilege against self incrimination but that the error was harmless in this case.  The California Supreme Court held:

> The prophylactic *Boykin-Tahl* requirements are not limited to pleas of guilty, however.  A defendant's agreement to submit the case on the record of the preliminary hearing in circumstances tantamount to a plea of guilty is also subject to those requirements [citations] as is an admission of an allegation made in the information or indictment for the purpose of increasing the punishment otherwise applicable to the offense.

(*Adams*, *supra*, 6 Cal.4th at p. 576.)

Pertinent to our appeal the *Adams* court also stated:

> "Because of the significant rights at stake in obtaining an admission of the truth of allegations of prior convictions, which rights are often of the same magnitude as in the case of a plea of guilty, courts must exercise a comparable solicitude in extracting an admission of the truth of alleged prior convictions.  Although the issue was neither before the Supreme Court in *Boykin* nor before us in *Tahl*, it is nevertheless manifest that an accused is entitled to be advised of those constitutional rights waived by him in making such an admission.  As an accused is entitled to a trial on the factual issues raised by a denial of the allegation of prior convictions, an admission of the truth of the allegation necessitates a waiver of the same constitutional rights as in the case of a plea of guilty." (*Yurko* [ (1974) ] 10 Cal.3d 857, 860, italics added.)

(*Adams*, *supra*, 6 Cal.4th at p. 577.)

The *Adams* court also held:

> Nothing in those cases obliges the court to advise a defendant of the right to jury trial, and to confrontation and cross-examination, and the privilege against self-incrimination prior to accepting a stipulation that does no more than relieve the People of the burden of offering evidence of the existence of an element of a sentence enhancement. This is true regardless of whether the stipulation is made by counsel or by the defendant personally.  Since the stipulation is not an admission of the truth of the enhancement allegation or of all the facts necessary to find the allegation true and impose the penalty, *Yurko*, *supra*, 10 Cal.3d 857, does not mandate that *Boykin-Tahl* advice and waivers accompany the stipulation or that defendant be advised of the penal consequences of a finding that the allegation is true.

(*Adams*, *supra*, 6 Cal.4th at pp. 582-583.)

The resolution of this appeal then turns on a determination whether the stipulation entered into in this case is "an admission of the truth of allegations of prior convictions" or "a stipulation that does no more than relieve the People of the burden of offering evidence of the existence of an element of a sentence enhancement." The stipulation in this case was that appellant agreed that the prosecution would not have to call the fingerprint classifier as a witness[,] and appellant stipulated that the witness would testify that recent fingerprints were appellant's prints and they matched the fingerprints in the 969b package. We reject appellant's contention that "since the stipulation proved that the prior convictions and prison term in the 969b were his, it was tantamount to a guilty plea, thereby requiring the court to advise him of his rights pursuant to [*Boykin*] and [*Tahl*]."

We agree that the factual stipulation offered by Adams reduced the burden on the prosecution to prove the existence of his prior convictions[;] however[,] it was nothing more than a simple stipulation of just an element of a sentence enhancement. The fact that appellant's recent fingerprints matched those in the 969b packages did not prove everything needed to establish the proof of the prior convictions for purposes of a sentence enhancement. Further factual review and evaluation would have been necessary, either by the trial judge or the jury. Appellant offered a stipulation regarding the testimony of the fingerprint examiner[;] he did not admit the truth of the sentencing enhancement in its entirety. As pointed out by the respondent: "in order to prove a section 667.5, subdivision 9b) [*sic*] enhancement, the prosecution must prove that the defendant (1) was previously convicted of a felony, (2) was imprisoned as a result of that conviction, (3) completed the term of imprisonment, and (4) did not remain free of both prison custody and commission of a new offense resulting in a felony conviction for a period of five years. (*People v. Tennner* (1993) 6

Cal.4th 559, 563.)  Thus, the fact that the fingerprints matched did not prove the prior prison term."

     *People v. Howard* (1992) 1 Cal.4th 1132 relaxed the requirements of *Boykin* and held that failure to specifically articulate each of the three constitutional rights waived by a plea of guilty or admission of a prior conviction does not necessarily require reversal if the record nonetheless makes it clear that the "plea was voluntary and intelligent under the totality of the circumstances." (*Id.* at p. 1178.)  A *Howard* analysis might also allow us to conclude that a *Boykin-Tahl* error, if any, was harmless in this case.  We conclude however, there was no error in this case, because the stipulation entered into by appellant in this case was not tantamount to a plea of guilty nor was it an admission of a sentencing enhancement.

Lodgment 4 at 3-7 (footnote omitted) (minor formatting changes included).

     Petitioner points to no Supreme Court case that the state courts either contravened or unreasonably applied in issuing the foregoing rejection.  As the Court of Appeal stated, Petitioner stipulated to a piece of *evidence tending to show* that he committed the alleged priors.  Fingerprint evidence may be strong evidence of identity, and so perhaps some litigant one day will persuade the Supreme Court to extend *Boykin* to settings like this one.  Because the high court has not yet done so, however, habeas relief is unavailable.

## XI.

## CLAIM 8:  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

     Lastly, Petitioner asserts that his appellate attorney was ineffective for failing "to: (1) investigate; (2) research the applicable laws concerning petitioner's case; (3) present any claim of merit; ([4]) failed [*sic*] within the professional duties as an appeal attorney; and (5) these cumulative errors had a severe prejudicial effect upon petitioner's

appeal." Petitioner does not explain these subclaims.  They therefore merit rejection under *James*.  Even if the Court assumes, for the sake of discussion, that Petitioner means to assert that appellate counsel should have asserted some array of the other foregoing claims, then this claim still has no merit, for the foregoing claims have no merit.

## XII.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that the Court (1) enter an Order accepting the findings and recommendations in this Report and (2) enter Judgment dismissing the action with prejudice.

DATED:  July 9, 2009

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE